**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BRITISH BROADCASTING CORP.,

Petitioner,

v.

U.S. DEPARTMENT OF JUSTICE – CIVIL DIVISION, FEDERAL PROGRAMS BRANCH,

Respondent.

Case No. 1:26-mc-00135 (JEB)

**OPPOSITION TO PETITIONER'S MOTION TO COMPEL**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................ 5

I. The Presidential Privilege Bars the Sought Testimony. .................................................... 6

*A. Mr. Cipollone's testimony is not directly relevant to the central issues in the underlying defamation suit.* ........................................................................ 13

*B. The BBC has failed to show that evidence of the President's "intentions and goals on January 6" cannot be obtained through a different source.* ....................... 15

*C. The BBC's purported "need" does not outweigh the public interest in preserving the presidential privilege.* ........................................................................ 17

II. The Attorney-Client Privilege Bars the Sought Testimony. ............................................. 19

III. The Government Is Not Precluded From Asserting the Presidential Privilege or Attorney-Client Privilege. ........................................................................ 21

IV. The Motion to Compel Should Be Denied Under the Apex Doctrine. ............................ 23

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Alabama Rivers All. v. FERC*,
325 F.3d 290 (D.C. Cir. 2003)........................................................................ 22, 23

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)........................................................................................ 22

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
318 F. Supp. 3d 347 (D.D.C. 2018) ................................................................... 5

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)................................................................................ 9, 12, 14

*Conservation Force v. Jewell*,
66 F. Supp. 3d 46 (D.D.C. 2014) .............................................................. 19, 20

*Croddy v. FBI*,
2005 WL 8168910 (D.D.C. Mar. 30, 2005)....................................................... 24

*Cruz v. Green*,
2019 WL5208913 (S.D. Fla. Feb. 7, 2019) ....................................................... 24

*Dellums v. Powell*,
561 F.2d 242 (D.C. Cir. 1977)...................................................................... 9, 10

*FDIC v. Galan-Alvarez*,
2015 WL 5602342 (D.D.C. Sep. 4, 2015) ................................................ 6, 24, 25

*FTC v. Shaffner*,
626 F.2d (7th Cir. 1980).................................................................................. 20

*In re U.S. Dep't of Educ.*,
25 F.4th 692 (9th Cir. 2022)........................................................................ 18, 19, 24

*In re Lindsey*,
158 F.3d 1263 (D.C. Cir. 1998)................................................................... 20, 21

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
659 F. Supp. 3d 54 (D.D.C. 2023) ............................................................ 13, 22

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997)...................................................................... *passim*

*In re United States (Holder)*,
197 F.3d 310 (8th Cir. 1999) .......................................................................... 25

*In re United States (Jackson)*,
624 F.3d 1368 (11th Cir. 2010) .......... 23, 24

*In re United States (Kessler)*,
985 F.2d 510 (11th Cir. 1993) .......... 23

*Kroy IP Holdings, LLC v. Groupon, Inc.*,
127 F.4th 1376 (Fed. Cir. 2025) .......... 23

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
731 F.3d 199 (2d Cir. 2013) .......... 25

*Linder v. Dep't of Defense*,
133 F.3d 17 (D.C. Cir. 1998) .......... 5

*Loving v. Dep't of Def.*,
550 F.3d 32 (D.C. Cir. 2008) .......... 6, 9

*Nixon v. Sirica*,
487 F.2d 700 (D.C. Cir. 1973) .......... 8

*Protect Democracy Project, Inc. v. NSA*,
10 F.4th 879 (D.C. Cir. 2021) .......... 7, 8, 9

*Simplex Time Recorder Co. v. Sec'y of Lab.*,
766 F.2d 575 (D.C. Cir. 1985) .......... 23, 24

*Trump v. Thompson*,
20 F.4th 10 (D.C. Cir. 2021) .......... 10, 11, 15

*Trump v. United States*,
603 U.S. 593 (2024) .......... 19

*U.S. Dep't of Treasury v. Black*,
719 F. App'x 1 (D.C. Cir. 2017) .......... 10, 13

*U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*,
351 F. Supp. 3d 140 (D.D.C. 2018) .......... 10, 14, 15

*United States v. Morgan*,
313 U.S. 409 (1941) .......... 21

*United States v. Navarro*,
182 F.4th 1005 (D.C. Cir. 2026) .......... 7

*United States v. Newman*,
531 F. Supp. 3d 181 (D.D.C. 2021) .......... 23, 24

*United States v. Nixon*,

418 U.S. 683 (1974) ........ *passim*

*Watts v. S.E.C.*,
*Watts v. S.E.C.*, 482 F.3d 501 (D.C. Cir. 2007) ........ 5

*Wilderness Soc. v. U.S. Dep't of Interior*,
344 F. Supp. 2d 1 (D.D.C. 2004) ........ 20

**Rules**

Fed. R. Civ. P. 26 ........ 5, 17

Fed. R. Civ. P. 45 ........ 4, 5, 16

## INTRODUCTION

The British Broadcasting Corporation ("BBC")'s subpoena of the former White House Counsel is an extraordinary request—and the BBC does not come close to justifying it. Current and former attorneys to the President are almost never subject to deposition regarding their conversations with the President. For good reason: Conversations between the President and his White House Counsel are protected by at least two levels of privilege—namely, the presidential communications privilege ("presidential privilege") and attorney-client privilege—to say nothing of the apex doctrine. And discovery requests in a civil suit rarely (if ever) justify discarding either privilege or the apex doctrine. This case is no different.

The at-issue subpoena to Mr. Cipollone—who served as Assistant to the President and the Counsel to the President ("White House Counsel") on January 6, 2021—arises out of a defamation suit currently pending in the Southern District of Florida. The suit was brought by President Donald J. Trump in his individual capacity against the BBC, claiming that a 2024 BBC documentary contained a defamatory depiction of President Trump's speech on January 6, 2021. In connection with this defamation suit, the BBC has issued a subpoena to Mr. Cipollone seeking to depose him regarding his communications and interactions with President Trump on January 6, 2021. Although the BBC acknowledges that Mr. Cipollone has already provided publicly available testimony to a Congressional committee regarding the events of January 6, it laments the fact that during his Congressional testimony, Mr. Cipollone refused to divulge his privileged communications with the President. The BBC now seeks precisely the privileged testimony that was withheld from Congress.

The BBC's attempt to depose Mr. Cipollone fails wholesale on the merits. The presidential privilege, attorney-client privilege, and the apex doctrine all independently justify denying the

BBC's motion to compel. *See* ECF No. 1. As supported by the declaration by the Deputy White House Counsel Joshua T. Hoyt, *see* Hoyt Decl. (Exhibit A), the testimony sought from Mr. Cipollone strikes at the heartland of presidential privilege—a reality recognized by Congress's acceptance of Mr. Cipollone's refusal to divulge his privileged communications during committee testimony. And where, as here, the underlying dispute is a non-constitutional civil suit, the BBC's purported "need" for the privileged testimony cannot overcome the assertion of the presidential privilege by the sitting President. This is especially true because the demanded testimony is, at best, tangentially relevant to the underlying dispute. Indeed, the Florida district court overseeing the defamation suit recently quashed a similar subpoena issued to a former White House staff, in part because her testimony regarding the events of January 6, 2021 was not sufficiently relevant to the issues presented in the defamation suit.

Further, attorney-client privilege provides an independent ground for denying the motion to compel. The BBC explicitly seeks private conversations between the President and Mr. Cipollone, who, during the relevant period, was acting in his official capacity as the White House Counsel, the highest level of direct presidential advisor and legal counsel in the White House. Thus, the legal counsel that Mr. Cipollone provided to the President on January 6, 2021 is protected by attorney-client privilege.

Lastly, the motion to compel should be denied under the "apex doctrine" because the BBC has failed to establish that extraordinary circumstances justify the deposition of Mr. Cipollone in his capacity as a former high-ranking government official.

## BACKGROUND

The BBC seeks Mr. Cipollone's testimony in connection with a civil suit pending in the Southern District of Florida entitled *Trump v. British Broadcasting Corporation* ("*Trump v. BBC*"),

No. 1:25-cv-25894 (S.D. Fla. Dec. 15, 2025) ("defamation suit"), brought by President Donald J. Trump in his individual capacity against the BBC for defamation, among other related claims. The crux of the defamation suit is that a 2024 BBC documentary contained "false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump" and his speech on January 6, 2021, *see Trump v. BBC*, First Am. Compl. ¶¶ 1-2, ECF No. 124 (S.D. Fla. Aug. 8, 2026) (Exhibit B), "to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting," *id.* ¶ 6. The district judge and the magistrate judge overseeing the defamation suit have issued multiple discovery and case-management orders. As relevant here, the magistrate judge overseeing discovery issued an omnibus-discovery order on August 6, 2026. *See Trump v. BBC*, Omnibus Order Following Disc. Hr'g on Joint Mot. for Disc. Hr'g, ECF No. 120 ("*Trump v. BBC*, Discovery Order") (S.D. Fla. Aug. 6, 2026) (Exhibit C). In it, the magistrate judge reasoned that the "Defendant is entitled to discover Plaintiff's intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech." *Id.* at 11. But the magistrate judge also made clear "that the scope of discovery is not unlimited in nature," *id.* at 9, and that "the Complaint does not extend so far as to entitle [the BBC] to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events," *id.* at 11.

Importantly, the district court has since further clarified the scope of discovery in a recent order quashing a subpoena issued to Cassidy Hutchinson, who served as a White House official on January 6, 2021. *See In re Subpoena to Hutchinson*, No. 1:26-mc-26171, Order Consolidating Cases and Quashing Subpoena, ECF No. 175 ("*In re Hutchinson*, Order Quashing Subpoena") (S.D. Fla. Sep. 24, 2026) (Exhibit D). In it, the district court explained that the underlying issue in

the defamation suit is "narrow." *Id.* at 4. As the court emphasized, this "case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart." *Id.* The court echoed the magistrate judge's caution that "the Complaint does not extend so far as to entitle [the BBC] to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events." *Id.* (quoting *Trump v. BBC*, Discovery Order at 11). The court then granted the motion to quash by concluding, in part, that testimony from Ms. Hutchison regarding the "events of January 6, 2021" was not sufficiently relevant to the underlying defamation dispute. *See id.*

On August 12, 2026, the BBC issued a subpoena out of the Southern District of Florida to Mr. Cipollone, seeking to depose him on September 15, 2026. *See Trump v. BBC*, Subpoena to Testify at a Deposition in a Civil Action to Pat Cipollone (S.D. Fla.) (Exhibit E). In response, on September 1, 2026, the U.S. Department of Justice ("DOJ") sent a letter to counsel for the BBC explaining, among other things, that the demanded testimony from Mr. Cipollone is "covered by multiple privileges" and "is not relevant and proportional to the needs of this case." *See* Jacob S. Siler, Trial Att'y, Fed. Programs Branch, U.S. Dep't of Just., Letter to Charles D. Tobin, Counsel for the British Broad. Corp. at 2 (Sept. 1, 2026) (Exhibit F). The DOJ also invited counsel for the BBC to engage in further discussions regarding the subpoena. *Id.*; *see also Trump v. BBC*, Discovery Order at 15 ("The Parties shall confer, in good faith and in accordance with Local Rule 7.1(a)(2) regarding all remaining discovery disputes at issue.").

Forgoing any further conferral, the BBC moved on September 22, 2026 to compel the DOJ, Civil Division, Federal Programs Branch to permit Mr. Cipollone to comply with the subpoena. *See* ECF No. 1-1 ("Mot. to Compel") at 8. In this motion, the BBC asserts that it seeks testimony

from Mr. Cipollone "about how President Trump responded and reacted" to "violence at the Capitol," *id.* at 10; "his communications with President Trump," *id.*; "his own interactions with and unique observations of President Trump on January 6," *id.* at 12; and "what he said to President Trump specifically, or what President Trump said in response," *id.* at 14. The BBC has agreed to postpone the deposition of Mr. Cipollone pending the resolution of this dispute. *See id.* at 8.

**ARGUMENT**

"[W]hen deciding a motion to compel under Rule 45, the district court first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined in Rule 26(b)(1)." *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Importantly, under Rule 26(b)(1), "relevant" discovery is limited to "nonprivileged" evidence. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). "Next, the court must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" *BuzzFeed, Inc.*, 318 F. Supp. 3d at 356 (quoting *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007)).

Here, the motion to compel should be denied because the testimony sought from Mr. Cipollone implicates the presidential privilege, the President's attorney-client privilege with his former White House Counsel, and the Executive's interest in preventing high-ranking government officials from being compelled to testify about their official conduct.

Although as a general matter, "the party resisting discovery" bears the burden of "show[ing] that the [evidence] requested [is] either unduly burdensome or privileged," *BuzzFeed, Inc.*, 318 F. Supp. 3d at 356 (citation omitted), here, the burden lies with the BBC for two reasons.

*First*, where, as here, the President has asserted the presidential privilege, the sought testimony is "presumptively privileged" and the party seeking it bears the burden of overcoming the presumption by showing a compelling "need" for the privileged testimony. *See In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). *Second*, because the BBC seeks testimony from Mr. Cipollone in his capacity as a former high-ranking government official, the Court must apply the "apex doctrine," which shifts the burden to the party seeking to depose the official to show that "extraordinary circumstances" justify the deposition. *FDIC v. Galan-Alvarez*, 2015 WL 5602342, at *3 (D.D.C. Sep. 4, 2015).

The BBC's motion to compel should be denied for three independent reasons. First, the presidential privilege bars the demanded testimony because the privilege cannot be overcome in a civil suit that does not involve an alleged constitutional violation. In any event, the presidential privilege bars the demanded testimony because the BBC's purported need for Mr. Cipollone's testimony is inadequate or, at a minimum, outweighed by the public interest and the potential harm from disclosure. Second, the attorney-client privilege also bars disclosure where, as here, the underlying litigation is a civil defamation suit, and the demanded testimony involves advice Mr. Cipollone provided to the President in his capacity as the White House Counsel. And third, the BBC failed to identify any extraordinary circumstances that would justify deposing a former high-ranking government official about the performance of his official duties while holding that position.

## I. The Presidential Privilege Bars the Sought Testimony.

The presidential privilege "preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (citations omitted). It follows from the core constitutional principle that

the "President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *United States v. Nixon*, 418 U.S. 683, 706, 708 (1974). It is thus "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *Id.*

To be sure, the presidential privilege "is qualified, not absolute." *In re Sealed Case*, 121 F.3d at 745. But the bar for overcoming the privilege is high. Indeed, "the presidential communications privilege is more difficult to surmount" than the deliberative process privilege. *Id.* at 746. For instance, whereas the deliberative process privilege "disappears altogether when there is any reason to believe government misconduct occurred . . . a party seeking to overcome the presidential privilege seemingly must always provide a focused demonstration of need, even when there are allegations of misconduct by high-level officials." *Id.* As the D.C. Circuit has long recognized, "[t]he uniqueness of the President has frequently led courts to recognize that the President enjoys more extensive privileges than other executive branch officers." *Id.* at 748. As such, "presidential communications deserve special protection." *Id.* at 749. Thus, once presidential privilege has been properly invoked, the burden shifts to the party seeking disclosure to establish its "need" for the privileged materials by "balanc[ing] the public interests served by protecting the President's confidentiality in a particular context with those furthered by requiring disclosure." *Id.* at 753.

Here, the declaration submitted by Joshua T. Hoyt, who serves as the Deputy White House Counsel, satisfies the assertion of presidential privilege. *See* Hoyt Decl. ¶ 6 (noting that he is authorized to invoke the privilege and does so at the direction of the President); *In re Sealed Case*, 121 F.3d at 744 n.16 (explaining that presidential privilege was properly asserted in an affidavit

by the former White House Counsel, who stated that "the President . . . ha[d] specifically directed [him] to invoke formally the applicable privileges over those documents" (citation omitted)); *see also United States v. Navarro*, 182 F.4th 1005, 1021 (D.C. Cir. 2026) ("[O]nly a President or his designee may invoke executive privilege."). As explained in the declaration, the subpoena issued to Mr. Cipollone seeks testimony subject to the presidential privilege because it seeks testimony regarding Mr. Cipollone's direct conversations with the President while Mr. Cipollone was serving as the White House Counsel. *See* Hoyt Decl. ¶¶ 7-9; *see also* Mot. to Compel at 14. As the D.C. Circuit has made clear, "what was said by or directly to the President lie at the heart of the presidential communications privilege." *Protect Democracy Project, Inc. v. NSA*, 10 F.4th 879, 886 (D.C. Cir. 2021); *see also In re Sealed Case*, 121 F.3d at 752 (explaining that even "communications made by presidential advisers in the course of preparing advice for the President come under the presidential communications privilege, even when these communications are not made directly to the President").[1]

Tellingly, the BBC does not make a meaningful attempt to argue that the testimony it seeks is not subject to the presidential privilege. For good reason: The BBC's motion to compel even acknowledges that the BBC is seeking testimony from Mr. Cipollone regarding his direct

[1] The "the presidential communications privilege is more difficult to surmount" than the deliberative process privilege. *See In re Sealed Case*, 121 F.3d at 746. So, where, as here, the *entirety* of the sought testimony implicates presidential privilege, there is no need to examine deliberative process privilege. *See id.* ("[W]e would need to address application of the deliberative process privilege as to any document only if we determine that the withheld document is not subject to the presidential privilege.").

Still, deliberative process privilege is also properly invoked and bars the demanded testimony. *See* Hoyt Decl. ¶ 10. If, however, this Court determines "that the presidential communications privilege alone is not a sufficient basis" to quash the subpoena, "the President should be given an opportunity to raise more particularized claims of privilege." *In re Sealed Case*, 121 F.3d at 744-45.

conversations with the President when Mr. Cipollone served as the White House Counsel. *See, e.g.*, Mot. to Compel at 14. The BBC instead assumes that the privilege is applicable but argues that its purported "need" for Mr. Cipollone's testimony overcomes the privilege. *See id.* at 13-14. In a cursory attempt to establish its purported "need," the BBC asserts that Mr. Cipollone's testimony "about what he said to President Trump specifically, [and] what President Trump said in response . . . would be uniquely valuable evidence of President Trump's intentions and goals on January 6." *Id.* at 14. And, in the BBC's telling, "[b]ecause President Trump has placed those subjects directly at issue by filing a defamation lawsuit against the BBC, due process now prevents President Trump from asserting executive privilege to block the BBC from obtaining evidence about those subjects." *Id.* This purported "need" is a far cry from those identified by parties who have successfully overcome the presidential privilege.

To begin with, the rare instances in which the presidential privilege is overcome usually concern criminal prosecution—not civil litigation. *Compare Nixon*, 418 U.S. at 713 ("The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial."); *Nixon v. Sirica*, 487 F.2d 700, 717 (D.C. Cir. 1973) (rejecting a presidential privilege objection to a grand jury subpoena "in the face of the uniquely powerful showing made by the Special Prosecutor in this case"), *with Protect Democracy Project, Inc.*, 10 F.4th at 886 ("In the FOIA context, once even a qualified privilege like the presidential communications privilege applies to a record claimed exempt from disclosure under Exemption 5, a need showing does not overcome it."). That distinction reflects, in part, the recognition that "[t]he right to production of relevant evidence in civil proceedings does not have the same 'constitutional dimensions' as it does in the criminal context." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 384 (2004) (quoting *Nixon*, 418 U.S. at 711).

The BBC makes a feeble attempt to argue "that executive privilege can be overcome in civil litigation," Mot. to Compel at 13, by citing *Dellums v. Powell*, 561 F.2d 242 (D.C. Cir. 1977). But *Dellums*—although a civil suit involving allegations of civil conspiracy concerning constitutional rights—does not control here. To begin with, a key, if not central, premise of *Dellums*' analysis was that the privilege was asserted "solely by a former president." *Id.* Indeed, the court considered the fact that "there ha[d] been no assertion of privilege by an incumbent president" to be "of cardinal significance." *Id.* at 247. The court "assum[ed] arguendo" that a former president is permitted to assert privilege but reasoned that any such assertion "carries much less weight than a claim asserted by the incumbent himself." *Id.* By contrast, here, the privilege is asserted by the sitting President.

Besides, *Dellums*'s facts are fundamentally different: The underlying civil dispute there accused government officials of constitutional violations. *Id.* at 247 (explaining that the dispute was "tantamount to a charge of civil conspiracy among high officers of government to deny a class of citizens their constitutional rights and where there has been sufficient evidentiary substantiation to avoid the inference that the demand reflects mere harassment"); *see also In re Sealed Case*, 121 F.3d at 744 (understanding *Dellums* to be limited to "a charge of civil conspiracy among high officers of government" (citation omitted)). And because of that context, the court reasoned, there was "constitutional value in the need for disclosure in order to provide the kind of enforcement of constitutional rights." *Dellums*, 561 F.2d at 247. Moreover, the court explained, "[t]he possibility of disclosure in such instances is not unlike the possibility of disclosure in criminal cases the infrequent occasions of such disclosure militate against any substantial fear that the candor of Presidential advisers will be imperiled." *Id.*

Given the unique circumstances surrounding the privilege ruling in *Dellums*, it has no

application where, as here, the privilege is asserted by the sitting President himself and the underlying civil dispute does not allege constitutional violations by government officials. Indeed, courts consistently confine *Dellums* to that unique circumstance, and so should this one. *Compare U.S. Dep't of Treasury v. Black*, 719 F. App'x 1, 3 (D.C. Cir. 2017) (per curiam) (reversing a district court's ruling in part because it failed to account for all the ways in which the case differed from *Dellums*), *with U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 351 F. Supp. 3d 140, 153, 155-56 (D.D.C. 2018) (relying on *Dellums* where the privilege was not asserted by the sitting President and "[l]ike the plaintiffs in *Dellums*, [plaintiffs] alleged a 'civil conspiracy among high officers of government to deny a class of citizens their constitutional rights'" (quoting *Dellums*, 561 F.2d at 247)).

The BBC's invocation of *Trump v. Thompson*, 20 F.4th 10, 16 (D.C. Cir. 2021), is also futile. *See* Mot. to Compel at 13-14. Like in *Dellums*, but unlike this case, the privilege in *Thompson* was only invoked by the former President. *Thompson*, 20 F.4th at 32. Besides, *Thompson* also involved a Congressional request. *Id.* at 24. "The President's ability to withhold information from Congress implicates different constitutional considerations than the President's ability to withhold evidence in judicial proceedings." *In re Sealed Case*, 121 F.3d at 753; *see also Thompson*, 20 F.4th at 25 ("[W]hen disputes between the President and Congress over records requests have made their way to court, courts have employed carefully tailored balancing tests that weigh the competing constitutional interests.").

In a passing attempt to analogize this case to *Thompson*, the BBC quotes the opinion for the proposition that the "executive privilege 'may give way in the face of other strong constitutional values,' including 'the fundamental demands of due process of law.'" Mot. to Compel at 13-14 (quoting *Thompson*, 20 F.4th at 26). The BBC seems to suggest that "due process"

is also implicated in this case. As the BBC sees it, "[b]ecause President Trump has placed those subjects directly at issue by filing a defamation lawsuit against the BBC, due process now prevents President Trump from asserting executive privilege to block the BBC from obtaining evidence about those subjects." *Id.* at 14. The BBC distorts *Thompson*'s holding—although it quotes *Thompson*'s reference to "due process," it conveniently omits the tail end of the sentence, which plainly identifies "'the fundamental demands of due process of law' in *criminal* trials." 20 F.4th at 26 (emphasis added) (quoting *Nixon*, 418 U.S. at 713, which expressly addressed "the fundamental demands of due process of law in the fair administration of criminal justice").[2] The BBC identifies no support for the notion that the presidential privilege must yield to its nebulous invocation of "due process" in a civil proceeding—let alone where, as here, a sitting President is invoking the privilege. *Cf. Cheney*, 542 U.S. at 384 (explaining that "the need for information in the criminal context is much weightier" than it is in the civil context).

In sum, the BBC's request for Mr. Cipollone's testimony lacks the hallmarks of a successful request for presidential communications. The throughline in the caselaw is clear: A request for privileged presidential communications cannot succeed without, at a minimum, some *constitutional* dimension, such as one that may be present in certain criminal proceedings, where the need for evidence may implicate constitutional due process rights; congressional investigations, where separation of powers and other constitutional prerogatives may be relevant; or proceedings concerning constitutional violations by government officials in a civil suit. After

[2] Indeed, *Nixon* made clear that it "address[ed] only the conflict between the President's assertion of a generalized privilege of confidentiality and the constitutional need for relevant evidence in criminal trials." 418 U.S. at 712 n.19; s*ee also id.* ("We are not here concerned with the balance between the President's generalized interest in confidentiality and the need for relevant evidence in civil litigation.").

all, the presidential privilege is itself rooted in the Constitution; thus, only an interest with constitutional dimensions can overcome it. *See Thompson*, 20 F.4th at 26 ("Executive privilege may be overcome by a strong showing of need by another institution of government . . . [a]nd the privilege may give way in the face of other strong constitutional values such as the fundamental demands of due process of law in criminal trials" (citation modified)).

The upshot of the precedent is that where, as here, the BBC seeks presidential communications for the sole purpose of litigating a *non-constitutional* civil dispute, its assertion of "need" lacks the constitutional dimensions needed to overcome the assertion of the privilege by the *sitting* President. So, the BBC's assertion of "need" should be rejected outright, and the motion to compel should be denied.

But even if this Court finds it necessary to analyze the substance of the BBC's assertion of "need" and balance it against the interest of preserving confidentiality, the Court should still deny the motion to compel. To show sufficient "need" for information subject to presidential privilege, the BBC must at least show that (1) "each discrete group of the subpoenaed [evidence] likely contains important evidence" and (2) the sought evidence "is not available with due diligence elsewhere." *In re Sealed Case*, 121 F.3d at 754. The BBC has failed to satisfy either component (let alone both). And in any event, the BBC's purported "need" cannot outweigh the significant public interest against disclosure.

### *A. Mr. Cipollone's testimony is not directly relevant to the central issues in the underlying defamation suit.*

The BBC fails the first component of establishing need because it has not shown that Mr. Cipollone's testimony is "directly relevant to issues that are expected to be central to the trial." *Id.* In fact, the BBC cannot even show that the demanded testimony satisfies the ordinary relevance and proportionality standard. In any event, the BBC's assertion of "need" lacks the required gravity

and specificity to overcome the presidential privilege.

To start, the sought testimony is not directly relevant to the central issue in the defamation case. Indeed, the issuing court overseeing the underlying defamation suit recently acknowledged the lack of relevance between the testimony of Ms. Hutchinson, a former White House official, about the events of January 6 and the defamation suit. *See In re Hutchinson*, Order Quashing Subpoena at 4-5. In its order quashing a similar subpoena, the issuing court explained that the underlying issue in the defamation suit is "narrow." *Id.* at 4. At its core, the "case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart." *Id.* So, "the Complaint does not extend so far as to entitle [the BBC] to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events." *Id.* (citation omitted). Thus, the court explained, the testimony sought from Ms. Hutchison regarding the "events of January 6, 2021" was not sufficiently relevant to the issue presented in the defamation suit. *See id.* (acknowledging that Ms. Hutchison's Congressional testimony regarding the events of January 6 was "largely irrelevant to the narrow issue in [the] lawsuit"). Accordingly, the court granted Ms. Hutchison's motion to quash while cautioning that "[t]he parties should not turn the discovery in this lawsuit into a fishing expedition." *Id.* at 4-5.

Similarly, here, Mr. Cipollone's testimony regarding January 6 would be of little relevance to the underlying suit, which is limited to the 2024 documentary aired by the BBC. And because Mr. Cipollone is a nonparty, the BBC's request for largely irrelevant testimony is particularly unwarranted. *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 60 (D.D.C. 2023) (explaining that the "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in the Rule 45

inquiry" (citation modified)).

Moreover, the sought testimony lacks the "specificity" needed to withstand the assertion of the presidential privilege. *See Black*, 719 F. App'x at 3 (explaining that the first component of the "need" inquiry under *In re Sealed Case* has a "specificity" requirement). Instead of identifying "'with specificity' 'that each discrete group of the subpoenaed [testimony] likely contains important evidence,'" *id.* (quoting *In re Sealed Case*, 121 F.3d at 754), the BBC makes a generic request for Mr. Cipollone's "communications with President Trump" on January 6, *see* Mot. to Compel at 10. Without specificity, the BBC's request is effectively a "fishing expedition" that the issuing court has already forbidden, *Trump v. BBC*, Order Quashing Subpoena at 4-5, and courts repeatedly condemn, *see, e.g.*, *Cheney*, 542 U.S. at 387 (rejecting "discovery requests … [that] ask for everything under the sky"). The BBC's lack of specificity further weakens (if not dooms) its already-inadequate attempt to overcome the presidential privilege. *Cf. id.* at 386-87 (explaining that the "exacting standards of (1) relevancy; (2) admissibility; (3) specificity" required for criminal subpoenas are "important safeguard against unnecessary intrusion into the operation of the Office of the President" (cleaned up)).

In sum, the largely irrelevant and generic testimony sought from Mr. Cipollone is, at best, "tangentially relevant or would relate to side issues." *In re Sealed Case*, 121 F.3d at 754. So, the BBC's request does "not satisfy [the first] component of the need inquiry." *Pension Benefit Guar. Corp.*, 351 F. Supp. 3d at 156 (citing *In re Sealed Case*, 121 F.3d at 754). This failure to satisfy the first prong of the inquiry alone requires denying the BBC's motion to compel. *In re Sealed Case*, 121 F.3d at 754 (explaining that both prongs are mandatory).

*B. The BBC has failed to show that evidence of the President's "intentions and goals on January 6" cannot be obtained through a different source.*

The BBC also fails the second component of the need inquiry, which requires it to show

"that [this] evidence is not available with due diligence elsewhere." *Id.* This requirement "reflects [the Supreme Court's] insistence that privileged presidential communications should not be treated as just another source of information." *Id.* at 755. Rather, "[e]fforts should first be made to determine whether sufficient evidence can be obtained elsewhere, and the subpoena's proponent should be prepared to detail these efforts and explain why evidence covered by the presidential privilege is still needed." *Id.* The BBC has failed to meet its burden.

As the BBC admits, Mr. Cipollone has provided non-privileged testimony to a Congressional committee about the events that took place on January 6, 2021. *See* Mot. to Compel at 14. The BBC, however, remains unsatisfied because Mr. Cipollone asserted privilege over—and thus refused to disclose—his communications with the President to Congress. Given the fact that Congress accepted Mr. Cipollone's assertion of privilege, the BBC now seeks Mr. Cipollone's testimony regarding those same privileged communications. *Id.* at 10-11. To begin with, the premise of the BBC's request is extraordinary—namely, that a British-based broadcasting corporation (which, unlike Congress, has no constitutional-oversight mandate) is somehow entitled to the privileged presidential communications that even Congress did not obtain. *Cf. Thompson*, 20 F.4th at 17 (weighing "Congress's uniquely vital interest" in seeking certain evidence subject to the presidential privilege).

Putting aside the stunning nature of this request, the BBC fails to adequately justify it. For instance, the BBC does not explain why it needs the President's privileged conversations with his White House Counsel on January 6 to litigate a "narrow" defamation suit related to a 2024 documentary. *See In re Hutchinson*, Order Quashing Subpoena at 4. And while it claims that it seeks "evidence of President Trump's intentions and goals on January 6," Mot. to Compel at 14, it fails to sufficiently "detail"—as it must—its "efforts" (if any) to gather such evidence of the

President's "intentions" from other sources, *In re Sealed Case*, 121 F.3d at 755; *cf. Pension Benefit Guar. Corp.*, 351 F. Supp. 3d at 159 (holding that the second prong was satisfied where the party seeking the materials "[had] conducted discovery from *all* other key parties in this case and [had] not received information that speaks to the issues related to the subjects in their discovery request" (emphasis added)).[3]

Because the BBC has failed to satisfy both prongs of the "need" inquiry, it cannot overcome the President's assertion of the presidential privilege. Thus, this Court should deny the motion to compel. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (providing that the Court "must quash . . . a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies"); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

*C. The BBC's purported "need" does not outweigh the public interest in preserving the presidential privilege.*

But regardless, any purported "need" by the BBC cannot outweigh the "public interests served by protecting the President's confidentiality." *In re Sealed Case*, 121 F.3d at 753; *see also id.* at 764 (explaining that the court "must balance the public interests at stake in determining whether the privilege should yield in a particular case, and must specifically consider the need of the party seeking privileged evidence").

As the D.C. Circuit has long recognized, there is "great public interest in preserving the confidentiality of conversations that take place in the President's performance of his official duties because such confidentiality is needed to protect the effectiveness of the executive decision-

[3] Indeed, rather than engaging in a meet-and-confer in response to the DOJ's letter offering to do so, the BBC filed the at-issue motion to compel. This further highlights the BBC's failure to conduct its sought discovery with "due diligence." *In re Sealed Case*, 121 F.3d at 754.

making process." *Id.* at 742 (cleaned up). The "confidentiality" of presidential communications "has all the values to which we accord deference for the privacy of all citizens and, added to those values, is the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking." *Nixon*, 418 U.S. at 708. For a well-functioning government, "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *Id.*

This public interest in confidentiality is particularly pressing where, as here, the demanded testimony is from the former Assistant to the President and White House Counsel—the most senior direct presidential advisor and legal counsel in the White House. As the Deputy White House Counsel explains: "Based on [his] experience . . . the deposition testimony demanded here would have a chilling effect on communications with the Executive Office of the President, making it more difficult for the President to obtain candid advice from and explore alternatives with a wider circle of senior advisors and their staffs"; "would greatly diminish the quality of decisionmaking within the federal government, make it more difficult for the President to perform his duties under the Constitution"; and "would also likely alter the decisionmaking process of future presidents by discouraging senior White House advisors from associating with (or associating their staff with), or offering full and candid advice on, presidential deliberations on potentially controversial topics—the precise issues where fulsome, candid advice is most valuable—narrowing the range of input and advice that a president receives." Hoyt Decl. ¶ 9. Moreover, as Mr. Hoyt further explains, based on his experience, if the presidential privilege is pierced in this case or other similar cases, it "would discourage qualified individuals from participating in public service in the Executive Office of the President—and particularly in high-ranking positions, such as the White

House Counsel—or would more likely cause individuals to leave such positions when controversy arises." *Id.*; *cf. In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022) ("The threat of [former government officials] having to spend their personal time and resources preparing for and sitting for depositions could hamper and distract officials from their duties while in office. If allowed the minute cabinet secretaries [or high-ranking government officials] leave office, overwhelming and unnecessary discovery could also discourage them from taking that office in the first place or leaving office when there is controversy."). Disclosure here would thus significantly impede "the effective discharge of a President's powers" (current and future) and could have far-reaching and significant consequences for the Federal Government. *Trump v. United States*, 603 U.S. 593, 595 (2024) (quoting *Nixon*, 418 U.S. at 711).

On the other end of the balancing spectrum, there is no "public" interest in disclosure of the President's privileged communications with Mr. Cipollone. Indeed, the BBC does not even attempt to identify one—nor could it. The only interest served by disclosure is the BBC's *own* self-interest in (largely irrelevant) evidence in a civil suit. Any such interest falls woefully short of outweighing the public interest in preserving presidential confidentiality, which is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *Nixon*, 418 U.S. at 708. So, the motion to compel should be denied.

## II. The Attorney-Client Privilege Bars the Sought Testimony.

The attorney-client privilege provides an independent ground to deny the motion to compel. As outlined in the declaration by the Deputy White House Counsel, "the President communicated with Mr. Cipollone, his White House Counsel, for the purpose of securing primarily Mr. Cipollone's legal opinion and legal services, including on January 6, 2021." Hoyt Decl. ¶ 11. Those communications are thus protected by attorney-client privilege. *See Conservation Force v.*

*Jewell*, 66 F. Supp. 3d 46, 62 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015) ("The attorney-client privilege applies if the [government] can prove[] that the attorney was 'acting as a lawyer and the communication was made for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" (quoting *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (per curiam))). The government "carr[ies] the burden of demonstrating the 'confidentiality' of the lawyer-client communication, 'both at the time of the communication and maintained since.'" *Id.* (quoting *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 16 (D.D.C. 2004)). This standard is met here because the President sought—and received—legal advice from Mr. Cipollone in his capacity as the White House Counsel. Hoyt Decl. ¶ 11; *see also In re Lindsey*, 158 F.3d at 1271 (to assert attorney-client privilege, "the Office of the President had to show that [the White House attorney's] conversations 'concerned the seeking of legal advice' and were between [the President] and [the attorney] or between others in the White House and [the attorney] while [the attorney] was 'acting in his professional capacity' as an attorney" (quoting *FTC v. Shaffner*, 626 F.2d at 37 (7th Cir. 1980))).

For its part, the BBC argues that any legal advice Mr. Cipollone provided to the President on that day is not protected by attorney-client privilege under *In re Lindsey* "because Mr. Cipollone was serving as the White House Counsel, not President Trump's private attorney." *See* Mot. to Compel at 13 (arguing that "under *In re Lindsey*[], attorney-client privilege does not protect communications between the President and an attorney from the White House Counsel's Office unless that attorney was acting only as an intermediary between the President and his private attorneys").

The BBC mischaracterizes *In re Lindsey*, which stands for the narrow proposition "that a

government attorney may not invoke the attorney-client privilege in response to *grand jury* questions seeking information relating to the possible commission of a federal crime." 158 F.3d at 1266 (emphasis added). Indeed, in that same opinion, the D.C. Circuit made clear that "government officials will still enjoy the benefit of fully confidential communications with their attorneys *unless* the communications reveal information relating to possible criminal wrongdoing." *Id.* at 1276 (emphasis added). Thus, *In re Lindsey* does not prohibit the invocation of attorney-client privilege where, as here, Mr. Cipollone's testimony is not sought in connection with a criminal proceeding.[4]

## III. The Government Is Not Precluded from Asserting the Presidential Privilege or Attorney-Client Privilege.

As a last-ditch attempt to prevent the government from asserting any form of privilege altogether, the BBC halfheartedly suggests that issue preclusion "may" preclude the assertion of privilege. *See* Mot. to Compel at 15. The BBC invokes the redacted opinions by a district court in this jurisdiction, which rejected then-former President Trump's invocation of executive privilege and attorney-client privilege with respect to the testimony of certain government officials in a grand jury proceeding related to the events of January 6, 2021. *See id.*at 14-15.[5] The BBC hypothesizes that the unredacted versions of the BBC's cited cases "*already* rejected claims of

---

[4] To be sure, *In re Lindsey* does, indeed, consider whether Mr. Lindsey acted as a "intermediary" between the President and his private attorneys. 158 F.3d at 1278-83. But that issue was relevant in that case because Mr. Lindsey's testimony was sought in connection with a grand jury proceeding. The President's *personal* attorney—unlike his White House Counsel—*can* assert attorney-client privilege to avoid testifying before a grand jury. *See id.* at 1271. So, the President sought to prevent Mr. Lindsey from testifying before the grand jury by arguing that he was acting as his personal attorney by serving as an "intermediary" between the President and his private attorneys. *See id.* at 1278. That distinction, however, is irrelevant here because Mr. Cipollone's testimony is not sought in connection with a grand jury proceeding.

[5] The BBC identifies three redacted opinions: Mem. Op., *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-25-BAH (D.D.C. Sept. 28, 2022); Mem. Op., *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-39-BAH (D.D.C. Dec. 9, 2022); Mem. Op., *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-33-BAH (D.D.C. Nov. 19, 2022).

executive privilege and attorney-client privilege over Mr. Cipollone's testimony about the same topics that the BBC seeks to explore at his deposition." *Id.* at 5. The BBC seeks to unseal these opinions, which, according to the BBC, "could preclude" the government's invocation of privilege with respect to Mr. Cipollone's testimony "entirely." *Id.*

This argument is a nonstarter. Generally, issue preclusion occurs "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (citation omitted) (alteration in original). Importantly, issue preclusion does not apply if the "[i]issues," when stated at the proper level of generality, "are not identical"—*e.g.*, "if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same"; or if the factual setting of the suits are materially different. *Id.* at 154-57 (citation omitted); *see also, e.g.*, *Alabama Rivers All. v. FERC*, 325 F.3d 290, 296 n.7 (D.C. Cir. 2003) (explaining that collateral estoppel "only applies to issues in substance the same as those resolved in an earlier proceeding" (citation omitted)).

Here, even if the BBC's speculations about the unsealed version of those opinions are correct, issue preclusion would still be inapplicable. The proceedings the BBC points to never decided the issues presented in this subpoena-related dispute. As even the redacted versions of the opinions demonstrate, the court rejected the former President's invocation of the presidential privilege and attorney-client privilege in light of the fact that (1) the request for disclosure arose in the context of a criminal proceeding, and (2) the privilege was invoked by the former (as opposed to the sitting) President. *See*, *e.g.*, Mem. Op., *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-33-BAH (D.D.C. Nov. 19, 2022) at 24-26, 38-41. As explained above, where, as here,

neither factor is present, the assertions of the presidential privilege and attorney-client privilege stand on entirely different footing. *See supra* pp. 9-20. Thus, any future attempt by the BBC to formally invoke issue preclusion would be futile because the privilege disputes here are not "in substance the same as those resolved in [the grand jury proceeding]." *Alabama Rivers All.*, 325 F.3d at 296 n.7 (citation omitted); *see also, e.g.*, *Kroy IP Holdings, LLC v. Groupon, Inc.*, 127 F.4th 1376, 1380 (Fed. Cir. 2025) ("Collateral estoppel generally does not apply when the second action involves application of a different legal standard, such as a different burden of proof.").

**IV. The Motion to Compel Should Be Denied Under the Apex Doctrine.**

Lastly, the "apex doctrine" provides an independent ground to quash the BBC's subpoena to Mr. Cipollone. Under this doctrine, the party seeking to depose "top executive department officials" must demonstrate that "extraordinary circumstances" justify the deposition. *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985). "Indeed, there is a presumption against deposing high-ranking government officials." *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (citation omitted).

This doctrine originates from *United States v. Morgan*, where the Supreme Court held that the Secretary of Agriculture should not have been subjected to a deposition because it was improper "to probe [his] mental processes." 313 U.S. 409, 421-22 (1941). Since then, courts in various jurisdictions, including the D.C. and Eleventh Circuits, have routinely held that under the apex doctrine, high-ranking government officials, should not—absent exceptional circumstances—be deposed or called to testify regarding an agency's reasons for taking, or facts regarding, official action. *See, e.g.*, *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Simplex Time Recorder Co.*, 766 F.2d at 586-87. That is because "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation

of powers," *In re United States (Jackson)*, 624 F.3d 1368, 1372 (11th Cir. 2010). Thus, "a district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *Id.* at 1376.

In sum, the apex doctrine "serves several purposes: (1) to protect the integrity and independence of the government's decision-making processes, (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion, and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants." *Newman*, 531 F. Supp. 3d at 188 (citation modified). These rationales apply fully to high-ranking public officials after they leave office; as such, "[t]he apex doctrine is no less applicable to former officials than to current officials." *Galan-Alvarez*, 2015 WL 5602342, at *4-5 (applying the doctrine to the former FDIC chair and then-current senior deputy director); *see also Croddy v. FBI*, 2005 WL 8168910, at *1 (D.D.C. Mar. 30, 2005) (former FBI director); *Cruz v. Green*, 2019 WL5208913, at *1-4 (S.D. Fla. Feb. 7, 2019) (former county sheriff); *Newman*, 531 F. Supp. 3d at 190-91 (former Deputy Counsel and Deputy Assistant to the President); *cf. In re U.S. Dep't of Educ.*, 25 F.4th at 699-706 (explaining that separation-of-powers principles weigh in favor of quashing a subpoena for the deposition of the former Secretary of Education).

The concerns of the apex doctrine apply to the BBC's attempt to depose Mr. Cipollone, who, during the relevant period, held one of the highest-ranking federal offices as the White House Counsel. As such, absent a showing of "extraordinary circumstances," the BBC cannot depose Mr. Cipollone. *Simplex Time Recorder Co.*, 766 F.2d at 586. Importantly, the burden of establishing the presence of "extraordinary circumstances" lies with the BBC. *See Galan-Alvarez*, 2015 WL 5602342, at *3 (explaining that the party seeking the testimony of the high-ranking government official bears the burden of showing "extraordinary circumstances"). Moreover, this burden is

heavier where, as here, Mr. Cipollone is a nonparty, and thus has greater protection from the burdens of discovery under Rule 45. *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d at 60. The BBC has failed to carry its burden.

Extraordinary circumstances exist if "the official has unique firsthand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Galan-Alvarez*, 2015 WL 5602342, at *3 (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)). The party seeking discovery must show "that the discovery sought is relevant and necessary and that it cannot otherwise be obtained." *In re United States (Holder)*, 197 F.3d at 314.

The BBC has failed to make any such showing for substantially the same reasons outlined above. Specifically, as explained above, the BBC has failed to establish that the testimony it seeks is sufficiently relevant or proportional (let alone, necessary) to the adjudication of the underlying defamation suit. *See supra* pp. 13-15; *see also In re Hutchinson*, Order Quashing Subpoena at 4-5 (explaining that testimony from a former White House official regarding the events of January 6 would be of little relevance to the defamation dispute regarding the contents of the 2024 BBC documentary). And although the BBC claims that Mr. Cipollone's testimony will provide "evidence of President Trump's intentions and goals on January 6," Mot. to Compel at 14, it has failed to establish that such evidence of "intentions and goals" cannot be obtained from other sources, *see supra* pp. 15-17.

**CONCLUSION**

For the above reasons, this Court should deny the BBC's motion to compel.

Dated: October 9, 2026

Respectfully submitted,
BRETT A. SHUMATE

Assistant Attorney General
Civil Division

ALEXANDER HAAS
Director, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Section
Enforcement and Affirmative Litigation

*/s/ Pardis Gheibi*
PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Attorneys for the Respondent*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Pardis Gheibi*