**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRITISH BROADCASTING CORP.,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE – CIVIL DIVISION, FEDERAL PROGRAMS BRANCH,<br><br>Respondent. | Case No. 1:26-mc-00135-JEB |

# REPLY MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO COMPEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45

**BALLARD SPAHR LLP**

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Yanni Chen (#1724687)
Maya Gandhi (#NY0584)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2218
Fax: 202-661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
cheny@ballardspahr.com
gandhim@ballardspahr.com

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: 646-346-8094
duddings@ballardspahr.com

*Attorneys for Petitioner*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. Executive Privilege Does Not Justify Blocking Mr. Cipollone's Deposition ........ 3

A. Executive Privilege May Already Be Waived ........ 3

B. The Underlying Dispute Implicates Grave Constitutional Issues ........ 4

C. Mr. Cipollone's Testimony Is Highly Relevant to the Underlying Litigation ........ 6

D. Alternative Sources Cannot Substitute for Mr. Cipollone's Testimony. ........ 7

II. The Apex Doctrine Does Not Justify Blocking Mr. Cipollone's Deposition ........ 11

III. Attorney-Client Privilege Does Not Justify Blocking Mr. Cipollone's Deposition ........ 12

IV. The Court Should Disregard DOJ's Arguments About The Redacted Opinions ........ 14

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. FBI*,
186 F.R.D 113 (D.D.C. 1998)....................10, 11

*Betternoi, LLC v. Aloizos*,
2026 WL 1181121 (S.D. Fla. Jan. 29, 2026)....................6

*Dellums v. Powell*,
561 F.2d 242 (D.C. Cir. 1977)....................5

*FDIC v. Galan-Alvarez*,
2015 WL 5602342 (D.D.C. Sept. 4, 2015)....................11

*Jews for Jesus, Inc. v. Rapp*,
997 So. 2d 1098 (Fla. 2008)....................6

*Lane v. Random House Inc.*,
985 F. Supp. 141 (D.D.C. 1995)....................5

*In re Lindsey*,
158 F.3d 1263 (D.C. Cir. 1998)....................12, 13

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)....................4, 5

*Montgomery v. Risen*,
875 F. 3d 709 (D.C. Cir. 2017)....................4

*New York Times v. Sullivan*,
376 U.S. 254 (1964)....................5

*Schlefer v. United States*,
702 F.2d 233 (D.C. Cir. 1983)....................12

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987)....................5

*United States v. White*,
887 F.2d 267 (D.C. Cir. 1989)....................12

*Wash. Post. Co. v. Keogh*,
365 F.2d 965 (D.C. Cir. 1966)....................4

*Watts v. United States*,
394 U.S. 705 (1969)....................4

*WP Co. v. Dep't of Def.*,
626 F. Supp. 3d 69 (D.D.C. 2022) ........................................................................ 12

*Zimmerman v. Al Jazeera Am., LLC*,
329 F.R.D. 1 (D.D.C. 2018) ................................................................................. 11

**Other Authorities**

U.S. Const. amend. I ........................................................................................... 3, 4, 5

U.S. Const. art. II, § 3 ........................................................................................... 13

## PRELIMINARY STATEMENT

In its Opposition ("Opp.") (ECF 9) to the BBC's Motion ("Mot.") (ECF 1) to Compel the Deposition of Pat Cipollone, DOJ fails to justify its dogged effort to block the BBC from obtaining the testimony it needs to defend itself against President Trump's $10 billion defamation lawsuit.

DOJ does not dispute that President Trump accuses the BBC of defaming him through a documentary about his political support containing a 12-second clip of his speech at the Ellipse on January 6, 2021. DOJ does not dispute that, as a public official, President Trump must prove that the implication he claims the documentary conveys is false—*i.e.*, President Trump must prove he did ***not*** foment the violence at the Capitol on January 6. It also does not dispute that the BBC is therefore entitled to pursue evidence that refutes this element of President Trump's claim. Nor does it dispute that Mr. Cipollone is one of the few individuals known to have personally observed and interacted directly with President Trump while violence raged at the Capitol. And DOJ does not dispute that the BBC seeks Mr. Cipollone's deposition for the specific purpose of obtaining his testimony about those very interactions and observations.

DOJ does not dispute any of these points because it cannot do so. Instead, overtly operating "[a]t the direction of the President," *see* Hoyt Decl. (ECF 9-1) ¶ 2, DOJ offers four unsustainable theories to prevent the BBC from taking the deposition of this critical, direct witness who has lodged no objection himself. None of those theories justifies DOJ's obstruction.

**First,** DOJ claims that Mr. Cipollone's testimony is subject to executive privilege, but that privilege has been waived if press reports are correct that Mr. Cipollone has already testified on the subjects at issue. Moreover, the qualified protections of executive privilege can be overcome in civil proceedings, and it gives way here because President Trump's defamation claim carries weighty constitutional implications, because the testimony the BBC seeks from Mr. Cipollone is

highly relevant to one of the central elements of that claim, and because Mr. Cipollone's testimony cannot be replaced by alternative sources.

**Second,** DOJ claims that Mr. Cipollone's deposition triggers the apex doctrine, but that doctrine does not apply where the witness possesses unique, firsthand knowledge, and here Mr. Cipollone has unique, firsthand knowledge of the President's conduct on January 6, 2021.

**Third,** DOJ claims that Mr. Cipollone's testimony is subject to attorney-client privilege, but again that privilege has been waived if Mr. Cipollone has previously provided the testimony that the BBC seeks. Moreover, DOJ has failed in several respects to carry its burden of establishing that attorney-client privilege applies to Mr. Cipollone's communications with President Trump during the relevant events on January 6.

**Fourth,** DOJ claims that its arguments for blocking Mr. Cipollone's testimony are unaffected by then-Chief Judge Howell's rulings rejecting President Trump's claims of executive privilege and attorney-client privilege during Special Counsel Smith's investigation, but it is impossible to evaluate DOJ's efforts to distinguish those rulings based only on the redacted versions that are currently available to the public. DOJ's characterization of those rulings should be given no weight until and unless those opinions are unsealed, *see In re Appl. of the BBC for Access to Ops. and Orders Adjudicating Certain Assertions of Exec. Priv.* ("*In re BBC*"), No. 1:26-mc-81-JEB (D.D.C.), and the BBC can evaluate the rulings in full for itself.

President Trump chose to file a lawsuit that directly implicates what he said and did on January 6, 2021. He cannot now use the Executive Branch to block the BBC from obtaining the evidence it needs to defend itself against his claims. For all these reasons, and as discussed below, the BBC is entitled to obtain Mr. Cipollone's testimony, and the Court should grant its motion.

## ARGUMENT

### I. Executive Privilege Does Not Justify Blocking Mr. Cipollone's Deposition.

DOJ's claim that executive privilege bars Mr. Cipollone's testimony is riddled with error. DOJ first ignores that if Mr. Cipollone has already testified about the same communications with President Trump about which the BBC seeks to inquire, then the privilege is waived. DOJ then claims that "[a] request for privileged presidential communications cannot succeed without, at a minimum, some *constitutional* dimension," *see* Opp. at 12 (emphasis in original), ignoring the clear First Amendment considerations that are paramount where the President of the United States sues a news organization for its journalism. DOJ further misjudges how relevant Mr. Cipollone's testimony would be in the underlying litigation and how much the BBC needs that testimony from Mr. Cipollone. Finally, the DOJ's arguments regarding issue preclusion improperly rely on authority that the BBC has been prevented from reviewing in full for itself.

#### A. Executive Privilege May Already Be Waived.

DOJ misses the forest for the trees in responding to the argument that the Chief Judge's rulings may preclude DOJ from asserting executive privilege over Mr. Cipollone's testimony. DOJ launches into an analysis of issue preclusion, *see* Opp. at 22-23, which is problematic for other reasons discussed below, but DOJ fails to recognize the larger issue that if press reports are correct, and the Court rejected President Trump's assertions of privilege to allow for Mr. Cipollone's testimony, then Mr. Cipollone has *already* disclosed the information that DOJ now claims is privileged. Indeed, in urging then-Chief Judge Howell to block witness testimony "about privileged presidential communications regarding their advice to the President in discharging his official duties," President Trump expressly argued that "[t]his testimony, once elicited, forever voids the protections the privilege affords." *See* Mem. Op. at 4, *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-33-BAH (D.D.C. Dec. 18, 2022). Thus, the parties in this lawsuit agree

that if Mr. Cipollone has already testified about his communications with President Trump on January 6, executive privilege no longer applies as to testimony about the same subject.

**B. The Underlying Dispute Implicates Grave Constitutional Issues.**

DOJ further claims that the BBC's need for discovery in a defamation lawsuit cannot overcome executive privilege because "[a] request for privileged presidential communications cannot succeed without, at a minimum, some *constitutional* dimension." Opp. at 12 (emphasis in original). The problem with that argument is that the First Amendment is directly implicated in this lawsuit. In *Trump v. BBC*, No. 1:25-cv-25894 (S.D. Fla.), the sitting President of the United States is suing a press organization for defamation over how it reported on a public speech that he delivered in a previous term as President. Moreover, at the same time, President Trump is arguing elsewhere that *he* is constitutionally immune from any civil liability or criminal prosecution arising from that same exact speech. *See* President Donald J. Trump's Opening Br. at 59, *Lee v. Trump*, No. 26-7049 (D.C. Cir. Sept. 1, 2026) ("The First Amendment protects against not only ultimate liability, but also 'the harassment of lawsuits,' because litigation itself 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome,' especially for 'advocates of unpopular causes.'" (quoting *Wash. Post. Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966))); *see also id.* at 60 ("[T]he First Amendment safeguards even the most 'vehement, caustic, and . . . unpleasantly sharp attacks on government and public officials.'" (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969))). This state of affairs raises obvious and grave First Amendment issues.

Indeed, it is hornbook law that President Trump's cause of action and the type of statements at issue in the underlying litigation concern the First Amendment. *See, e.g.*, *Montgomery v. Risen*, 875 F. 3d 709, 713 (D.C. Cir. 2017) ("[W]here a person claims to have been defamed by statements about matters of public concern, the First Amendment protects robust debate by preventing either 'pure opinion[s]' or truthful statements from serving as grounds for liability." (citing *Milkovich v.*

*Lorain J. Co.*, 497 U.S. 1, 20 (1990))); *Tavoulareas v. Piro*, 817 F.2d 762, 771 (D.C. Cir. 1987) (explaining that the Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254 (1964) recognized that defamation actions can interfere with First Amendment rights of free expression and finding "in the First Amendment a demand that writers and speakers enjoy enough 'breathing space'"); *Lane v. Random House Inc.*, 985 F. Supp. 141, 149-50 (D.D.C. 1995) ("[D]efamation is inextricably linked with First Amendment concerns."). Thus, this dispute plainly involves the very "constitutional dimensions" that DOJ argues would be necessary to overcome executive privilege.

On the same point DOJ fails to distinguish this case from *Dellums v. Powell*, 561 F.2d 242 (D.C. Cir. 1977), which stands for the proposition that executive privilege can be overcome in a civil suit. As discussed above, this case involves constitutional issues, so, under this Circuit's precedent, "there is also a strong constitutional value in the need for disclosure in order to provide the kind of enforcement of constitutional rights that is presented by a civil action for damages." *Dellums*, 561 F.2d at 247.

Furthermore, while *Dellums* examined the invocation of executive privilege by a former president, it did not hold that the privilege is absolute when invoked by a sitting president. Rather, the D.C. Circuit assumed "arguendo [that] a former President may present a claim of presidential privilege" to find that "it is entitled to lesser weight than that assigned the privilege asserted by an incumbent President." *Id.* at 245. But even in distinguishing a sitting and a former President, the Circuit clearly spoke of communications involving the *current* operation of government: that the requested discovery is "of the kind whose nondisclosure is necessary to the protection of the presidential office and its *ongoing* operation." *Id.* at 248 (emphasis added). But here, Mr. Cipollone is a *former* advisor to President Trump from his *previous* term in office, and his testimony would concern events that took place five years ago. Preventing Mr. Cipollone from

testifying therefore would not provide any apparent protection to President Trump's "ongoing operation" in his second term. Indeed, the dicta that the DOJ cites makes most sense in the context of discovery requests to sitting presidents with respect to their *current* advisors.

### C. Mr. Cipollone's Testimony Is Highly Relevant to the Underlying Litigation.

DOJ also errs in underestimating the relevance of Mr. Cipollone's testimony. In overseeing discovery in the underlying litigation, Southern District of Florida Magistrate Judge Lett has made clear that the BBC is entitled to discovery that bears on President Trump's "intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech," including such as "whether President Trump gave it intentionally or otherwise; the breadth of the audience of the message and impression; and the extent of any resulting injury or harm." *See* Omnibus Order Following Disc. Hr'g on Jt. Mots. for Disc. Hr'g ("Omnibus Order") at 9-11, *Trump v. BBC*, ECF 120. That is because President Trump claims the BBC's documentary defamed him by creating a "false, malicious, and defamatory message and impression that President Trump fomented violence" in giving his January 6, 2021 speech at the Ellipse. *Id.* (citing Compl. ¶ 105(c), *Trump v. BBC*, ECF 1); *see also* First Am. Compl. ¶ 135(c), *Trump v. BBC*, ECF 124 (same in operative amended complaint). Accordingly, the issues of whether President Trump fomented violence, whether he gave his audience the impression that he wanted them to commit violence, and whether he gave that impression intentionally are central to the parties' ability to litigate falsity, one of the essential elements of a defamation claim. *Betternoi, LLC v. Aloizos*, 2026 WL 1181121, at *4 (S.D. Fla. Jan. 29, 2026) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

Mr. Cipollone has personal knowledge of these facts because he personally observed President Trump before, during, and after his speech. Mr. Cipollone was one of the small group

of individuals known to have communicated directly with President Trump on January 6, 2021, and to have personally witnessed President Trump's reaction to the news of violence at the Capitol. He has stated that he went to President Trump after his speech, and communicated to him that "there needed to be an immediate and forceful response, statement, public statement, that people need to leave the Capitol now." U.S. House of Reps. Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, Interview Tr. of Pasquale Anthony "Pat" Cipollone ("Cipollone Tr.") at 149:12-150:4 (available at https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000928885/pdf/GPO-J6-TRANSCRIPT-CTRL0000928885.pdf). President Trump's reaction to Mr. Cipollone's advice urging him to issue a statement that people needed to leave the Capitol building—where violence was taking place after he had given his speech—would directly reflect the President's intentions in giving that speech. And Magistrate Judge Lett has ruled that the BBC is "entitled" to such discovery. Omnibus Order at 11.

DOJ thus errs again in pressing for more "specificity" about the testimony that the BBC seeks from Mr. Cipollone. The BBC has identified specific, documented conversations that Mr. Cipollone had with President Trump at a defined point in time and seeks testimony about those conversations and Mr. Cipollone's observations. DOJ has largely succeeded in keeping sealed the court rulings that might contain further details of those conversations. DOJ thus cannot demand from the BBC information that DOJ is itself simultaneously pushing to conceal.

### D. Alternative Sources Cannot Substitute for Mr. Cipollone's Testimony.

Neither Mr. Cipollone's prior testimony nor other sources would be an adequate replacement for his deposition in the underlying litigation. As detailed above, Mr. Cipollone possesses unique knowledge that is highly relevant to the issue of falsity in President Trump's defamation claim. And as the BBC has established, Mr. Cipollone's previous statements before

the House Select Committee cannot serve as a suitable alternative because he did not testify about his communications with President Trump on the basis of executive privilege. *See* Pet'r's Mem. in Supp. of Mot. to Compel at 10-11, *In re BBC*, ECF 1-1.

The BBC also cannot obtain this evidence from other sources because President Trump is blocking all of the BBC's efforts to obtain any meaningful discovery. For example, in the underlying litigation, Magistrate Judge Lett had to order the President to provide unreleased, uncontested documents by October 21 that the BBC requested *in March*, and to swear to answers to interrogatories that he served—unsworn—in April. Oct. 9, 2026 Order, *Trump v. BBC*, ECF 180; *see also* Def.'s Mot. for Disc. Hr'g at 1-2, *Trump v. BBC*, ECF 138. Additionally, Mr. Cipollone remains one of the few identified people who would have firsthand knowledge of President Trump's conduct on January 6, 2021, as President Trump also refuses to answer the BBC's interrogatory request asking him merely to identify the persons with whom he communicated about his speech that day. *See* Def.'s Notice Ex. B at 1, *Trump v. BBC*, ECF 186-2.

President Trump has utterly flouted his discovery obligations, failing to produce *any* meaningful discovery over the course of the past eight months, with only two months to go in the discovery period that ends on December 18. Instead, while the BBC made thirteen document productions, totaling 9,371 documents and 114,266 pages produced, President Trump has made only two document productions. *See* Def.'s Notice at 2, *Trump v. BBC*, ECF 186. In his first production, President Trump disclosed just 135 documents and 755 pages of sources that were already available to the BBC or were publicly available on the internet, pulled in the two weeks before the production date. *See id.* at 1 n.1. And his second production was even more deficient, totaling just 20 documents and 253 pages, all pulled from the internet a week before production or

*produced to him by the BBC* (and in many cases, already docketed as exhibits to filings). *See id.* at 2.

The BBC cannot even obtain comparable testimony from Plaintiff himself in the underlying litigation. The BBC has been trying to schedule President Trump's deposition since early July, but President Trump's counsel has since rescinded his October deposition date (no location for which was ever offered) and has not provided any specific dates in substitution. *See* Mot. for Disc. Hr'g Related to Compelling Pl.'s Dep., *Trump v. BBC*, ECF 181.

President Trump has also hindered the BBC's efforts to even *reach* other third-party sources who might have remotely similar testimony to offer as Mr. Cipollone. For example, President Trump opposed the BBC's efforts to serve subpoenas on Donald Trump, Jr., Ivanka Trump, and Jared Kushner, which the Secret Service or Trump Organization security had blocked, seeking information regarding their observations and interactions with President Trump on January 6, 2021. *See* Pl.'s Mem. of Law in Opp. to Def.'s Mot., *Trump v. BBC*, ECF 131. Additionally, President Trump has directed identified third-party witnesses to withhold records from the BBC in response to deposition subpoenas. As this Court is aware, former Counsel to the Vice President Greg Jacob stated that he would not produce "potentially responsive documents" because the "potential assertion of executive privilege Office of White House Counsel." Suppl. Notice Regarding the Appl. of the British Broad. Corp. at 2, *In re BBC*, ECF 6.

President Trump has notified the BBC that he will also seek to quash the BBC's subpoena to former Special Counsel Jack Smith. Ironically, President Trump argues that the BBC should not be permitted to depose Mr. Smith because he purportedly lacks any personal knowledge regarding President Trump's Speech or his state of mind. Yet here, President Trump has

"direct[ed]" the DOJ to stop the BBC from obtaining the sworn testimony of someone who possesses precisely that level of personal knowledge, Mr. Cipollone. *See* Hoyt Decl. ¶ 2.

As his conduct throughout the underlying litigation has made clear, President Trump intends to impede any possible source, including himself, from testifying about the events of January 6 that Mr. Cipollone could discuss at his deposition. There is thus no substitute for Mr. Cipollone's testimony because he possesses unique and personalized knowledge on a highly relevant issue to the underlying case. To be sure, the BBC may not depose "any and all individuals who may have knowledge regarding the day's events." Sept. 24, 2026 Order at 4, *Trump v. BBC*, ECF 175 (citing Omnibus Order at 11). But President Trump and DOJ, here explicitly acting "[a]t the direction of the President," Hoyt Decl. ¶ 2, aim to prevent the BBC from being able to reach *any* individual who can testify about their knowledge of the events of January 6, 2021. This Court has already recognized this troubling pattern. *See* Sept. 5, 2026 Hr'g Tr. at 18:19-24, *In re BBC*, ECF 11 ("I think their overarching point is a pretty good one, which is, they get sued, and then when they try to get discovery into the motivation behind the President's actions which they argue shows that their reporting is true, they get stymied. So that's sort of a pretty unfair result.").

Finally, DOJ purports to be confused why the BBC will not simply accept the assertion of privilege that Mr. Cipollone made in his Congressional committee hearing, as Congress did. *See* Opp. at 16. For one, this argument conflicts with DOJ's original argument that Mr. Cipollone's House Select Committee statements should suffice for the BBC. *See* Mot. Ex. A at 3 (ECF 1-2). For another, Congress's choice to accept Mr. Cipollone's assertion of privilege illustrates why the BBC should be entitled to examine Mr. Cipollone for itself. The BBC, as a party to litigation with interests entirely separate and distinct from those of Congress, should be able to examine Mr. Cipollone itself, "probe the veracity and contours of [his] statements," and ask further questioning

tailored to the litigation. *Alexander v. FBI*, 186 F.R.D 113, 121 (D.D.C. 1998). Neither Mr. Cipollone's previous statements, nor supposed "other sources" that DOJ does not even try to identify, are an adequate substitute for Mr. Cipollone's testimony in this case

## II. The Apex Doctrine Does Not Justify Blocking Mr. Cipollone's Deposition.

DOJ's arguments about the apex doctrine simply ignore that the doctrine does not apply where, as here, the witness has "personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 6-7 (D.D.C. 2018) (permitting deposition of witness "notwithstanding his status as a high ranking corporate officer"); *see also* Opp. at 25 (noting that extraordinary circumstances exist to defeat the apex doctrine when an "official has unique firsthand knowledge related to the litigated claims" (citing *FDIC v. Galan-Alvarez*, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015))).

The BBC seeks Mr. Cipollone's testimony about his unique and specific interactions with and observations of President Trump on January 6. No one besides Mr. Cipollone possesses this knowledge—he alone can speak to his experience. And for the reasons discussed above, his testimony about those events is highly relevant to the adjudication of the underlying defamation suit, as it bears on whether President Trump can carry his burden of proof on an element of his claim. Moreover, President Trump's efforts to limit *any* third-party witness from testifying about these events means that the BBC has not been able to obtain any comparable testimony from others, with only two months left in the discovery period. The apex doctrine thus does not prevent Mr. Cipollone's deposition in this case.

## III. Attorney-Client Privilege Does Not Justify Blocking Mr. Cipollone's Deposition.

DOJ's arguments about attorney-client privilege suffer the same basic faults as its arguments on executive privilege and likewise fail to justify blocking Mr. Cipollone's deposition.

**First**, press reports (that President Trump has not argued are wrong) reflect that Mr. Cipollone has already testified about his communications with the President, such that the privilege has already been breached and cannot prevent Mr. Cipollone's testimony on the same topic in this case. *See, e.g.*, Mem. Op. at 32, *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-25-BAH (D.D.C. Sept. 28, 2022) ("disclosure of the 'substance' of privileged communications waives the attorney-client privilege") (quoting *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989)).

**Second**, as the party asserting privilege, DOJ bears the burden to prove that the privilege applies, *see In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998), and it has not carried that burden. For one thing, the Hoyt Declaration acknowledges that the advice Mr. Cipollone provided to President Trump was not necessarily legal advice. *See* Hoyt Decl. ¶ 7. Indeed, the Hoyt Declaration conspicuously states that Mr. Cipollone's conversations with President Trump on January 6 included "advice"—not just (or even any) *legal* advice. *See id.* ¶ 8. For another, the D.C. Circuit has long held that attorney-client privilege applies only when "the communication from attorney to client . . . is based on confidential information provided by the client." *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (Ginsburg, J.); *see also WP Co. v. Dep't of Def.*, 626 F. Supp. 3d 69, 84 (D.D.C. 2022) (rejecting claim of attorney-client privilege for failure to satisfy this requirement). Nothing in the Hoyt Declaration suggests that any advice Mr. Cipollone provided to President Trump on January 6 was based on confidential information that President Trump provided. To the contrary, Mr. Cipollone testified to the House Select Committee that his advice to President Trump was based on the contemporaneous news reporting about the

Capitol riot that Mr. Cipollone viewed on television. *See* Cipollone Tr. at 148:17-150:4. DOJ has thus failed to carry its burden to assert attorney-client privilege over Mr. Cipollone's communications with President Trump on January 6.

**Third**, DOJ's arguments about *In re Lindsey* are unavailing. While *In re Lindsey* addressed claims of attorney-client privilege in the grand jury context, the D.C. Circuit focused on the *rationale* behind the government attorney-client privilege: because it is "[t]he constitutional responsibility of . . . all members of the Executive Branch . . . to 'take Care that the Laws be faithfully executed[,] . . . the loyalties of a government lawyer therefore cannot and must not lie solely with his or her client agency." 158 F.3d at 1272-73 (citing U.S. Const. art. II, § 3). The D.C. Circuit thus made clear that "government officials will still enjoy the benefit of fully confidential communications with their attorneys unless the communications reveal information relating to possible criminal wrongdoing." *Id.* at 1276. Here, the conduct and communications about which the BBC seeks testimony from Mr. Cipollone—amounting to evidence probative of whether President Trump "fomented violence" for purposes of the underlying litigation, FAC ¶ 135(c), *Trump v. BBC*—was indeed investigated by the Special Counsel as possible criminal wrongdoing.

That conduct and President Trump's invocation of attorney-client privilege was also rejected multiple times by the former Chief Judge, who found that *In re Lindsey* "vitiates [Trump's] claim to privilege." Mem. Op. at 34-37, *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-25-BAH (D.D.C. Sept. 28, 2022); *see also* Mem. Op. at 38-41, *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-33-BAH (D.D.C. Nov. 19, 2022); Mem. Op. at 38-40, *In re Grand Jury*

*Subpoenas [Redacted]*, No. 22-gj-39-BAH (D.D.C. Dec. 9, 2022). Accordingly, attorney-client privilege should not shield Mr. Cipollone's communications with President Trump on January 6.

## IV. The Court Should Disregard DOJ's Arguments About The Redacted Opinions.

Finally, DOJ argues that the Court's decisions with respect to executive privilege and attorney-client privilege should not apply here because those invocations of privilege were made by a former President and in the context of a criminal proceeding. But it is not clear from the redacted versions of those decisions whether those factors were in any way dispositive to those decisions. As to executive privilege, neither President Trump's then-status as a former president, nor the fact that the request appeared in the criminal context, appear to be necessary conditions for the conclusion reached. Indeed, the Court expressly noted that executive privilege could be overcome in non-criminal proceedings. *See* Mem. Op. at 19-20, *In re Grand Jury Subpoenas [Redacted]*, No. 22-gj-25-BAH (D.D.C. Sept. 28, 2022). As to attorney-client privilege, nowhere does the redacted ruling indicate that this decision turned on the fact that, at the time, President Trump was not the sitting President. *See, e.g.*, *id.* at 34-37.

Discerning the further details in the Court's ruling that President Trump could not support his privilege claims—the same claims he is asserting here—is precisely why the BBC seeks to unseal those opinions in the related case before this Court. *See* Appl. of the British Broad. Corp., *In re BBC*, ECF 1. DOJ's motion here pointedly illustrates why unsealing is necessary.

## CONCLUSION

For the foregoing reasons and those stated in its opening brief, the BBC respectfully requests that this Court grant its motion to compel and require DOJ to permit Mr. Cipollone to comply with the BBC's deposition subpoena.

Dated: October 16, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

By: /s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Yanni Chen (#1724687)
Maya Gandhi (#NY0584)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2218 | Fax: 202-661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
cheny@ballardspahr.com
gandhim@ballardspahr.com

Sasha Dudding (#1735532)
1675 Broadway, 19th Floor
New York, NY 10019
Tel: 646-346-8094
duddings@ballardspahr.com

*Attorneys for Petitioner*